**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. QUIBIDS, LLC, an Oklahoma limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| 1. JOHN DOE, the owner of the domain name SWIPEBIDS.COM, | ) ) ) ) | |
| Defendant. | ) | |

## ORIGINAL COMPLAINT

The plaintiff, QuiBids, LLC ("QuiBids"), for its causes of action against the defendant, John Doe, the owner of the domain name SwipeBids.com ("Defendant"), alleges and states as follows:

## NATURE OF THE ACTION

1. This is an action for injunctive relief and monetary damages arising out of, *inter alia*, Defendant's trademark infringement, trade dress infringement, false designation of origin, and unauthorized use of QuiBids trademark, advertising, and depictions of QuiBids website through a video hosted on Defendant's website that is designed to confuse viewers into believing the video news article is about Defendant's company and website when in reality it is about QuiBids website and company, as well as to create initial interest confusion and confusion that Defendant is affiliated with, sponsored by, or owned by QuiBids.

## PARTIES

2. QuiBids is an Oklahoma limited liability company having its principal place of business in Oklahoma City, Oklahoma.

3. Defendant is the owner of the website SwipeBids.com. The identity of Defendant is unknown because Defendant is intentionally shielding its identity by utilizing an internet proxy registration service to mask and hide its ownership of the website SwipeBids.com. Nevertheless, counsel for QuiBids discovered that SwipeBids is represented by the law firm of Kronenberger Burgoyne, of San Francisco, California. In correspondence and phone calls between counsel for the parties, counsel for Defendant refused to provide the identity of the owner of SwipeBids.com (i.e., stating in a phone call that he was "not authorized" to disclose that information). The Oklahoma Secretary of State shows no registration for SwipeBids or what, upon information and belief, may be its parent company, Just Think Media. Therefore, upon information and belief, Defendant is not an Oklahoma company.

## JURISDICTION AND VENUE

4. This is an action arising in part under the laws of the United States, specifically § 43(a) and 43(c) of the *Lanham Act*. This court has original jurisdiction of these claims pursuant to 28 U.S.C. § 1331, 1332, and 1338. Jurisdiction as to all other causes of action is proper pursuant to 28 U.S.C. § 1367 because the causes of action set forth are so related that they form a part of the same case or controversy.

5. Venue is proper pursuant to 28 U.S.C. § 1391.

## BACKGROUND AND NATURE OF THE ACTION

6.      QuiBids is an online auction company.  At QuiBids' online website, located at www.quibids.com (the "QuiBids Website"), QuiBids offers an interactive auction service.  Through the QuiBids online interactive auction service, QuiBids' customers bid on and win various consumer goods.  QuiBids has operated the QuiBids Website since at least as early as October 2009.

7.      Defendant is a competitor of QuiBids.  Like QuiBids, Defendant offers interactive online auction services.  Defendant's online website is located at www.swipebids.com.  Defendant registered the domain name for its online auction service in December 2009, months after QuiBids started, and began operating its interactive online auction website sometime thereafter.

8.      The QuiBids Website design employs a generally orange and blue color scheme and a grid-format display for items up for auction.  Each individual display consists of a single item box.  From top to bottom, QuiBids first lists the name of the item, an image of the item, the time remaining on the auction for that item, the current bid in bright green font, and the name of the user with the then-current highest bid.  Finally, a "bid" button is provided at the bottom of the box for users to interactively place their bids.  The QuiBids "bid" button has rounded corners and is color-faded, transitioning from light-orange to dark-orange, top to bottom.  The QuiBids grid-format display on the QuiBids Webpage appears as shown below:

5769242_2.DOCX



9. In connection with QuiBids' services, QuiBids employs a predominantly blue and orange service mark incorporating a hangtag design (with string) in connection with the "Bids" word element in the QuiBids service mark. The orange and blue elements of the QuiBids mark employ color-faded designs, varying in color from light-orange in the center to dark-orange at the sides. On the QuiBids Website the following mark is prominently displayed:



10. After QuiBids had been successfully operating the QuiBids Website for months, Defendant adopted a website design that is confusingly similar to that of the QuiBids Website. Among other elements, Defendant has incorporated QuiBids' non-functional color scheme, graphic design elements, font or typeface styles, and bidding displays in an effort to create the same overall "look and feel" of the QuiBids Website. An example of Defendant's duplication efforts is Defendant's utilization of the same

4

grid-format display as QuiBids, including a duplication of every element - *in identical order* - as that of the QuiBids' grid-format display.  Defendant even uses bright green font for the bidding price and a color-faded light-orange to dark-orange rounded "bid" button for users to place their bids, as shown below:



11. Defendant's service mark is unmistakably similar to QuiBids' service mark. Aping the design of the QuiBids' mark, Defendant has chosen an orange and blue color scheme and incorporates a hangtag design (with string) above the "Bids" word element of its service mark.  Further mimicking QuiBids, Defendant has likewise adopted a color-fade design for the orange and blue in its mark, transitioning from light coloring to dark coloring, top to bottom.  On Defendant's website, the following mark is prominently displayed:



5

12. News Channel 9, a local television news station in Oklahoma City, Oklahoma, ran a video news story about QuiBids. The video news story was very favorable to QuiBids, discussed its business, depicted the QuiBids Website, displayed QuiBids service mark, and had interviews with several users of the QuiBids Website.

13. QuiBids has used, and continues to use, the unedited News 9 video about QuiBids to advertise on several websites across the internet. QuiBids advertising includes the words "QuiBids.com Saves Consumers Up to 95% Off Retail" above the News 9 video, and separates the video from the rest of the advertising by placing the News 9 video in a separate gray video display box with gray typeface underneath. Because of QuiBids use of the unedited News 9 video in its advertising, and because the unedited News 9 video repeatedly uses the QuiBids name, logo and images of the QuiBids Website, consumers encountering the News 9 video about QuiBids have come to associate the video's display and associated advertising, with QuiBids, and would expect websites showing the News 9 video to be affiliated, connected, or otherwise associated with QuiBids. A sample QuiBids advertisement[1] employing the News 9 video about QuiBids is shown below:

---

[1] See, e.g., http://www.consumertipsdigest.org/penny_auctions/vcpu/, last accessed June 16, 2010.

5769242_2.DOCX

14. Defendant obtained a copy of the News 9 video story, and on or before April 27, 2010, Defendant placed a copy of the News 9 video story on the front page of Defendant's website, shown below:

5769242_2.DOCX



Additionally, Defendant created the following copycat ad shown below (a QuiBids ad),[2] copying QuiBids content and design but removing links to the QuiBids Website:



---

[2] Available online at: http://www.consumernews28.com/pennyauctions/index2.html?t202id=54649&t202kw=&topicName=RUN+OF+SPORTS+%26+RECREATION, last accessed June 21, 2010.

5769242_2.DOCX

The layout, look and feel of the Defendant's copycat advertisement is the same as the layout, look and feel QuiBids uses in QuiBids' advertising and is deliberately designed to confuse consumers and take advantage of the goodwill QuiBids has developed.  While Defendant edited the News 9 video to remove any oral reference to QuiBids, the video continues to display QuiBids service mark and depict the QuiBids Website so as to create confusion in the minds of consumers that Defendants website is affiliated, connected, or otherwise associated with QuiBids.

15. Upon information and belief, Defendant is also the registrant of the deliberately misleading domain name www.channel9investigates.com, employing the same internet proxy domain registration service to conceal its identity as Defendant used to register the domain www.swipebids.com.  At the domain www.channel9investigates.com[3], Defendant uses multiple elements to deliberately deceive potential consumers as to the origin, source and subject of the News 9 video about QuiBids.  First, the header states "Channel 9 Investigates" and the News 9 video automatically plays when the site is visited.  Above the video are the words "SwipeBids In The News."  The same design elements of the original QuiBids ad referenced above have likewise been duplicated, including a QuiBids consumer testimonial and photograph lifted wholesale from QuiBids' site and relabeled as a SwipeBids.com testimonial:

---

[3] The only webpage at this domain name with data appears to be: http://channel9investigates.com/pennybids/1/?sid=PUL24, last accessed June 19, 2010, a screen shot of which is shown in this section.





16. Further, on Defendant's SwipeBids.com webpage, Defendant displays Defendant's edited News 9 video in the same box and directly under large font type stating "SwipeBids.com Saves Customers Up to 95% Off Retail," mirroring the language

10

used in QuiBids advertising and giving customers the false impression that the video is about Defendant rather than about QuiBids. Additionally, the News 9 video plays automatically when Defendant's website is visited, ensuring every visitor will be exposed to the News 9 video. The Defendant's website appears as follows:



17. Evidencing a likelihood of confusion, Defendant placed a disclaimer on the website stating, "News 9 and video is not affiliated with Swipebids." This disclaimer is designed to confuse customers and does not state that the service featured in the video is not that of Defendant. The disclaimer is also ineffective in that, among other things, it is designed and placed on Defendant's website in a way that it is not readily obvious or apparent. The Defendant's disclaimer is muted, appearing in small gray on gray type, is obscured with a dark gray gradient box, and is otherwise consistent with fine print that is not observed by the average consumer.

11

18.     Defendant has also purchased the keyword "QuiBids" through Google's AdWords keywords program and is using QuiBids' service mark in the text of its Sponsored Link ads to create initial interest confusion and trade off of or otherwise misuse the goodwill QuiBids has acquired in its mark.

19.     Further evidencing a likelihood of confusion are instances of actual confusion.  One such instance is an article published by Associated Content which records with crystal clarity instances of actual confusion among multiple individuals.  Published June 13, 2010, the article states, "Since I had perused both the *Swipebids* and the *QuiBids* auction sites and was struck by the exact similarily (sic) in the layout of the web sites, I wondered if they were one and the same. . . . There can be no doubt that the same people promoting *QuiBids* are the same people promoting *Swipebids*." [4] (Emphasis original.)

### COUNT I:  LANHAM ACT VIOLATION
### TRADEMARK INFRINGEMENT

20.     QuiBids realleges and incorporates by reference the allegations contained in each proceeding paragraph.

21.     This is an action under the trademark laws of the United States, specifically Section 43(a) of the *Lanham Act*, 15 U.S.C. § 1125(a), for the Defendant's unlawful use and infringement of QuiBids mark in connection with Defendant's website as well as use of the News 9 video to create confusion among customers.

---

[4] Joe Cuervo, *"Swipebids" and "QuiBids" Are the Same Penny Auction Ripoff*, available online at: http://www.associatedcontent.com/article/5454752/swipebids_and_quibids_are_the_same.html?cat=3, last accessed June 16, 2010.

5769242_2.DOCX

22. Defendant's use of QuiBids service mark, and depiction of QuiBids Website, with the advertising and/or sale of its services on its website and in Google AdWords keyword advertising, constitute a false designation of origin, false description and false representation that the services being offered and distributed by Defendant, originate from or are affiliated, connected, associated, sponsored or otherwise approved by QuiBids, and is likely to cause confusion, or to cause mistake, or to deceit or to deceive, in violation of 15 U.S.C. § 1125(a).

23. As a result of the unlawful conduct of Defendant, QuiBids has been and will continue to be damaged.

24. QuiBids will suffer irreparable harm should the infringement of Defendant and deceptive practices be allowed or continue to the detriment of QuiBids reputation and goodwill.

25. QuiBids remedy at law is not by itself to adequate to compensate for the injuries inflicted and threatened by Defendant.

26. Upon information and belief, the acts of Defendant were in bad faith, willful and in a conscious and reckless disregard for the truth such that this is an exceptional case for which QuiBids is entitled to treble damages and attorney's fees in accordance with 15 U.S.C. § 1117.

### COUNT II:  LANHAM ACT VIOLATION:  TRADE DRESS INFRINGEMENT / UNFAIR COMPETITION/ <u>FALSE ADVERTISING/FALSE DESIGNATION OF ORIGIN</u>

27. QuiBids realleges and incorporates by reference the allegations contained in each proceeding paragraph.

28. This is an action under the Section 43(a) of the *Lanham Act*, 15 U.S.C. § 1125(a), for the Defendant's unlawful use and infringement of QuiBids' trade dress, advertising, and the New 9 Video in connection with Defendant's website, as well as copying and use of QuiBids' advertising, and use of the AdWord "QuiBids," all to create confusion among customers.

29. QuiBids' Website and advertising trade dress resides in the non-functional aspects of the QuiBids Website and advertising design and presentation taken as a whole, and includes, but is not limited to, the specific colors, shapes, fonts, logos, layouts, themes, displays, arrangements and sequences identified above and is inherently distinctive or has acquired secondary meaning among the trade and the public as being identified exclusively with QuiBids.

30. Defendant's use of QuiBids Website and advertising trade dress on its website constitutes a false representation that the services being offered and distributed by Defendant, originate from or are affiliated, connected, associated, sponsored or otherwise approved by QuiBids, and is likely to cause confusion, or to cause mistake, or to deceit or to deceive, in violation of 15 U.S.C. § 1125(a).

31. Defendants' copying and use of QuiBids' advertising, and use of the News 9 Video on Defendants' Website and in its advertising, use of QuiBids' trade dress in its website and advertising, as well as Defendant's use of the QuiBid's AdWord, constitutes uses in commerce words, terms, names, symbols, and devices, and combinations thereof, and a false designation of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which is likely to cause confusion, or to cause

mistake, or to deceive as to the affiliation, connection, or association of Defendant with QuiBids, and confusion as to the origin, sponsorship, or approval of Defendants' goods and services, and commercial activities, by QuiBids.

32. As a result of the unlawful conduct of Defendant, QuiBids has been and will continue to be damaged.

33. QuiBids will suffer irreparable harm should the infringement of Defendant be allowed or continue to the detriment of QuiBids reputation and goodwill.

34. QuiBids remedy at law is not by itself to adequate to compensate for the injuries inflicted and threatened by Defendant.

35. Upon information and belief, the acts of Defendant as evidence by, *inter alia*, the blatant copying of QuiBids' advertisement, as well as Defendant's creation or approval of the highly misleading advertisement "Channel 9 Investigates," were in bad faith, willful and in a conscious and reckless disregard for the truth such that this is an exceptional case for which QuiBids is entitled to treble damages and attorney's fees in accordance with 15 U.S.C. § 1117.

### COUNT III:  VIOLATION OF THE OKLAHOMA DECEPTIVE TRADE PRACTICES ACT

36. QuiBids realleges and incorporates by reference the allegations contained in each proceeding paragraph.

37. This claim is brought pursuant to 78 Okla. Stat. § 53, the Oklahoma Deceptive Trade Practices Act.

5769242_2.DOCX

38. Defendants' actions constitute knowing false representations as to sponsorship, approval, affiliation, connection, association with or certification by QuiBids, and efforts to pass off the video, Defendant's website, its advertising and its goods and services as those of QuiBids, and to trade on QuiBids goodwill.

39. Defendant's conduct has caused and will continue to cause irreparable harm to QuiBids unless restrained by this Court.

40. Defendant willfully engaged in such deceptive trade practices, intended to injure and has injured QuiBids, and has acted in bad faith and in a conscious and reckless disregard for the rights of QuiBids, for which QuiBids is entitled to damages attorney's fees pursuant to 78 Okla. Stat. § 53.

### COUNT IV:  COMMON LAW UNFAIR COMPETITION/TRADE DRESS INFRINGEMENT AND PASSING OFF

41. QuiBids realleges and incorporates by reference the allegations contained in each proceeding paragraph.

42. Count IV is an action under the common law of the State of Oklahoma for unfair competition, trade dress infringement and passing off.

43. By copying, incorporating and using the distinctive configurations of QuiBids advertising, website and service mark, Defendant is unfairly competing with QuiBids, creating confusion regarding the source of Defendant's services, trading on the reputation and goodwill of, and infringing QuiBids' trademark, as well as the trade dress of QuiBids' advertising and Website, and passing off its services and goods as those of QuiBids, all in violation of the common law of the State of Oklahoma.

44. Upon information and belief, Defendant intentionally, knowingly and willfully engaged in common law unfair competition and passing off, acted in bad faith and in conscious and reckless disregard for the rights of QuiBids, for which QuiBids is entitled to attorneys' fees and costs.

45. QuiBids will suffer irreparable harm should Defendant's infringement be allowed to continue to the detriment of QuiBids' reputation and goodwill.

## PRAYER FOR RELIEF

WHEREFORE, QuiBids requests the Court enter judgment in its favor as follows:

A. Judgment be entered in favor of QuiBids and against Defendant as to each of the above counts;

B. Defendant be permanently enjoined from utilizing QuiBids advertising, trade dress, service mark, the edited News 9 video depicting QuiBids trademark and the QuiBids Website, and use of the AdWord QuiBids, or any other use of QuiBids trademark, advertising, AdWord, or the News 9 video, or other conduct which is likely to cause confusion, or to cause mistake or to deceive as to affiliation, connection or association of Defendant with QuiBids, as to origin, sponsorship or approval of Defendant's services by QuiBids;

C. Defendant be directed to file with this Court and serve on QuiBids within thirty (30) days after issuance of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

D. Defendant pay damages incurred by QuiBids as a result of the trademark infringement, unfair competition, and deceptive trade practices perpetrated by Defendant;

E. Defendant pay treble damages in accordance with 15 U.S.C. § 1117 as a result of Defendant's willful infringement;

F. QuiBids be awarded its attorneys' fees in accordance with 15 U.S.C. § 1117 and other applicable statutory and common law authorities, as well as under the Oklahoma Deceptive Trade Practices Act;

G. Defendant pay punitive damages in an amount commensurate with the gravity of its actions; and

H. QuiBids be granted such other and further relief as the Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

QuiBids hereby demands a trial by jury on all claims that may be tried before a jury.

Respectfully submitted this 21st day of June, 2010.

/s/ Michael D. McClintock
Michael D. McClintock, OBA #18105
Anthony L. Rahhal, OBA #14799
Ryan L. Lobato, OBA #22211
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK  73102
Telephone:   (405) 235-9621
Facsimile:    (405) 235-0439
**ATTORNEYS FOR QUIBIDS, LLC**