## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.    QUIBIDS, L.L.C., an Oklahoma limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 5:10-cv-00639-R |
| 1.    1524948 ALBERTA LTD., d/b/a TERRA MARKETING GROUP, a Canadian entity, represented by counsel for SWIPEBIDS.com to be the owner of the domain name swipebids.com, | ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
## AND BRIEF IN SUPPORT

Pursuant to Fed. R. Civ. P. 65(a), the plaintiff, QuiBids, L.L.C. ("QuiBids"), respectfully moves the Court for a preliminary injunction against the defendant, 1524948 Alberta Ltd. d/b/a Terra Marketing Group, the purported owner and operator of the website located at http://www.swipebids.com ("Defendant"). Specifically, QuiBids moves the Court for an order preliminary enjoining Defendant from (i) online use of a News 9 video about QuiBids' online auction service ("Video"); and (ii) from falsely claiming that QuiBids' Chief Executive Officer ("CEO"), Matt Beckham, is the CEO of SwipeBids.com in Defendant's advertising, with the injunction to remain in effect pending the disposition of the trial on the merits of this action. In support of its motion, QuiBids submits the following brief in support.

## BRIEF IN SUPPORT

### A.     STATEMENT OF FACTS

1.      QuiBids is an online auction website.  *See* Declaration of Matt Beckham, attached hereto as Exhibit "1" ("Beckham Decl.").   Matt Beckham is the CEO of QuiBids.  Beckham Decl., at ¶1.

### QUIBIDS' TRADEMARK

2.      In connection with QuiBids' website and services, QuiBids employs a predominantly blue and orange service mark incorporating a hangtag design (with string) in connection with the "Bids" word element in the QuiBids service mark.  The orange and blue elements of the QuiBids mark employ color-faded designs, varying in color from light-orange in the center to dark-orange at the sides.  On the QuiBids website the following mark is prominently displayed:



Beckham Decl., at ¶2.

### QUIBIDS' TRADE DRESS

3.      The QuiBids website design employs a generally orange and blue color scheme and a grid-format display for items up for auction.  Each individual display consists of a single item box.  From top to bottom, QuiBids first lists the name of the item, an image of the item, the time remaining on the auction for that item, the current bid in bright green font, and the name of the user with the then-current highest bid.  Finally, a

"bid" button is provided at the bottom of the box for users to interactively place their bids.  The QuiBids "bid" button has rounded corners and is color-faded, transitioning from light-orange to dark-orange, top to bottom.  The QuiBids grid-format display on the QuiBids Webpage appears as shown below:



Beckham Decl., at ¶3.

## QUIBIDS' USE OF NEWS 9 VIDEO IN ADVERTISING

4.    News Channel 9, a local television news station in Oklahoma City, Oklahoma, ran a Video news story about QuiBids.  Beckham Decl., at ¶4.  The Video news story was very favorable to QuiBids, discussed its business, depicted the QuiBids website, displayed QuiBids service mark, named QuiBids' Chief Executive Officer and had interviews with several users of the QuiBids website.  *Id.*

5.    Since at least as early as March 4, 2010, QuiBids has used, and continues to use, the unedited News 9 Video about QuiBids to advertise on several online websites.  Beckham Decl., at ¶5.  QuiBids' advertising includes the words "QuiBids.com Saves

Consumers Up to 95% Off Retail" above the Video, and separates the Video from the rest of the advertising by placing the Video in a separate gray video display box with gray typeface underneath. *Id.* Because of QuiBids' use of the unedited Video in its advertising, and because the unedited Video repeatedly uses QuiBids' name, logo and images of the QuiBids website, consumers encountering the Video have come to associate the Video's display and associated advertising with QuiBids, and would expect websites showing the Video to be affiliated, connected, or otherwise associated with QuiBids. *Id.*

## DEFENDANT AND ITS UNLAWFUL CONDUCT

6.      Defendant SwipeBids.com is an online auction website competitor of QuiBids.  Beckham Decl., at ¶6.

7.      Subsequent to QuiBids, Defendant obtained a copy of the Video about QuiBids' online auction website.  Beckham Decl., at ¶7.  Defendant edited the Video to remove any audible reference to QuiBids.  *Id.*  Defendant did not remove displays of QuiBids' trademark or distinctive website trade dress, nor did Defendant remove the name of QuiBids' CEO from the Video.  Defendant display the Video, which continues to show QuiBids' trademark, trade dress as shown in part above and the name of QuiBids' CEO, on their SwipeBids.com website and in advertising therefore including advertising on Defendant's other websites.  *Id.*  The Video automatically plays when any of Defendant's webpages that feature the Video are loaded, ensuring every visitor will be exposed to the video.  *Id.*

8.     Below is a depiction and comparison of a screen shot of: (i) Quibids'
website and use of the Video, with (ii) Defendant's website and confusing use of the
Video shown displaying use of QuiBids trademark.

### (i) QUIBIDS' WEBSITE AND USE OF VIDEO



### (ii) DEFENDANT'S CONFUSING USE OF VIDEO ON ITS WEBSITE



Beckham Decl., at ¶7.

9.      Below is a depiction and comparison of a screen shot of: (i) a QuiBids' advertising webpage, created February 19, 2010, which uses the Video, with (ii) Defendant's advertising website, created no earlier than April 14, 2010, with confusing use of the Video.

**(i) QUIBIDS AD**                    **(ii) DEFENDANT'S COPYCAT AD**



Beckham Decl., at ¶9.

10.     In addition to referencing QuiBids CEO Matt Beckham in the Video, Defendant further specifically advertises in prose that QuiBids' CEO is the CEO of SwipeBids.com, which confuses, causes mistake, misleads or deceives consumers and potential consumers as to the source, sponsorship, affiliation, endorsement or approval of the services provided by Defendant.  Beckham Decl., at ¶10.  An example of Defendant's advertising prose in which Defendant falsely claims QuiBids' CEO is the CEO of SwipeBids.com is depicted below.





**Why SwipeBids is Gaining Popularity**

"In a poor economy, it's no surprise why Americans are out to get a great deal, and users of the website are winning products that they wouldn't normally be able to afford. SwipeBids' popularity seems to be growing by the day. This is mostly due to SwipeBids' users recommending this site to friends, colleagues, and loved ones to win great deals. " says Matt Beckham, SwipeBids CEO.



"SwipeBids isn't your typical auction website. Where eBay users can usually save 5-15% off retail through their online auctions, we save our users an amazing 75-80% on average! The catch is, every time a user bids, it costs them $0.60. This allows us to be able to sell popular products like Digital Cameras, HDTVs, Laptops, and more for pennies on the dollar." - **Matt Beckham - SwipeBids CEO**

Beckham Decl., at ¶10.

11.     In April of 2010, QuiBids notified Defendant in writing that it must cease display of the Video, deceptive advertising and abuse of QuiBids' intellectual property rights.  Beckham Decl., at ¶11.  Nevertheless, Defendant has ignored QuiBids' demands and has continued its wrongful conduct. *Id*.

## LIKELIHOOD OF CONFUSION AND ACTUAL CONFUSION

12.     Defendant's actions have received the attention of several third party online auction reviewers who have been confused by the Defendant's actions.  Beckham Decl., at ¶12.  One article was posted at AssociatedContent.com and was written by an author calling himself "Joe Cuervo" titled *"Swipebids" and "QuiBids" Are the Same Penny Auction Ripoff*.  Beckham Decl., at ¶12.  In the article the author recounts his actual confusion induced by the trade dress of the respective websites and advertising:

> *Since I had perused both the* Swipebids *and the* QuiBids *auction sites and was struck by the exact similarity* (sic) *in the layout of the web sites, I wondered if they were one and the same. Well, the offer for* Swipebids *at http://www.consumernews28.com/pennyauctions/index2.html?t202id=5464 9&t202kw=&topicName=ESPN.com+College+Section shows a testimonial from a "Cyril B., from Arizona," who "just won a 32" Vizio HDTV for $2.60," and Cyril B. states, "I've really enjoyed using* **QuiBids** *(not* Swipebids*!) , it's kind of awesome!" There can be no doubt that the same people promoting* QuiBids *are the same people promoting* Swipebids*.*

*Id.* This article has been republished or linked to by at least four other entities, including a Facebook user who reposted the link so that it may be read and re-posted by his Facebook friends. *Id.*

13.     In a post on ComplaintsBoard.com, a user named Steven alleges that Defendant's services and QuiBids' services originate with the same entity based on a review of one of Defendant's advertising websites, www.channel9investigates.com, documented in QuiBids' First Amended Complaint, wherein the News 9 Video is prominently featured.   Beckham Decl., at ¶13.   The same poster then offers contact information for aggravated users, including the home telephone number and address of QuiBids' CEO, Matt Beckham.  *Id.*

14.     Matt Beckham received a message via Facebook on June 23, 2010 from a woman named Michelle Ward.  Beckham Decl., at ¶14.  In the message, Ms. Ward asks: "are you the swipebids guy?  if you are, good scam.  you just screwed me out of $150.00."  Beckham Decl., Exhibit B.  Matt Beckham has also received calls as a result of customers confused by Defendant's tactics, including threats.  *Id.*

15.     On the website NotMyTribe.com, a poster named Sarah expresses her confusion:

> **Comment** from **Sarah**   (IP: 94.193.242.135)
> **Time:** June 21, 2010, 10:13 am
>
> Quibids and Swipebids are using fake news site with fake testimonials to promote their site:
> **http://bit.ly/bydBbp** and **http://bit.ly/ayxPfl** both have a photo of exactly the same person but with a different name and home town.
>
> Why does the Quibids site look EXACTLY the same as Swipebids?
>
> This website says Matt Beckham is the CEO of Swipebids: **http://bit.ly/bQX3u9** This says he is CEO of Quibids: **http://bit.ly/bQX3u9**
>
> Another fake news site says that Jamie Wehlms is SwipeBids CEO: **http://www.consumertips-weekly.com/tech/**
>
> They probably just made that name up but it is closer to the true answer: not J Wehlms but J Willms >
> **http://edmonton.ctv.ca/servlet/an/local/CTVNews/20100320 /EDM_w5investigation_100320/20100320/**

Beckham Decl., at ¶15.  Such examples could be multiplied.[1]

16.     The Better Business Bureau of Edmondton, Canada rates 1524948 Alberta Ltd., which counsel for Defendant has stated is the owner and operator of SwipeBids.com, with a company score of 'F'.  Beckham Decl., at ¶16.  The Better Business Bureau of Oklahoma rates QuiBids with a company score of 'B+.'  *Id.*

17.     Jesse Willms is a director and 100% shareholder of 1021018 Alberta Ltd. In the Better Business Bureau of Edmonton, Canada report for 1021018 Alberta Ltd., Jesse Willms is listed as the owner of Defendant.  A copy of this report is attached hereto as Exhibit 2.

18.     Jesse Willms, and what appears to be his primary d/b/a/ Just Think Media, were recently the subject of a two-part Canadian news television expose titled "Just Think Twice," which recounts their online exploits of Jesse Willms and Just Think

---

[1] See, e.g., Eric Verlo, *Scriptmatix "penny auctions" such as Quibids are less scams than pure fraud* and comments therein,  available  online  at  http://notmytribe.com/2010/penny-auctions-quibids-swipebids-et-al-are-more-than-

Media, their various shell internet operations, lawsuits brought by Microsoft Corp. and Symantec for software piracy,  other thefts of intellectual property including use of the names of and likenesses of celebrities to increase credibility of his scam sales entities, and the over 2,200 Better Business Bureau complaints which have been filed against his online operations.   The two-part expose  is  viewable  online  at  the  URLs http://watch.ctv.ca/news/w5/just-think-twice/#clip278983                           and http://watch.ctv.ca/news/w5/just-think-twice/#clip278977, last accessed July 6, 2010.

## B.   ARGUMENTS AND AUTHORITIES

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of injunctions.  A party seeking a preliminary injunction must satisfy a four-factor test in order to be awarded such relief.  The requesting party must demonstrate (a) that it has a substantial likelihood of prevailing on the merits; (b) that it will suffer irreparable harm unless the preliminary injunction is issued; (c) that the threatened injury outweighs the harm the preliminary injunction might cause the opposing party; and (d) that the preliminary injunction if issued will not adversely affect the public interest.  *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067 (10th Cir. 2009).

In this matter, QuiBids meets all four factors.  Defendant, acting in bad faith, deliberately uses the Video and QuiBids' CEO's name to confuse customers as to the source, affiliation, sponsorship or endorsement of the services provided at Defendant's website.  QuiBids has experienced actual, irreparable and documentable harm and will

---

scams-theyre-fraud-818056.html, last accessed July 6, 2010, and *Who is Behind SwipeBids.com?*, available online at http://www.pennyauctionwatch.com/2010/05/swipebids-jesse-willms/, last accessed July 6, 2010.

continue to suffer should a preliminary injunction not issue.   Defendant will not be harmed by being deprived of the ability to falsely claim QuiBids' CEO's is its own or to use the Video about QuiBids' online auction service, and the public would be served by an injunction against Defendant's deceptive advertising tactics.

1.   **QuiBids Is Likely To Prevail on the Merits.**

QuiBids is seeking to enjoin Defendant from making false and misleading statements and representations to QuiBids' customers and potential customers and infringing QuiBids' service mark and trade dress.  This request for an injunction is based upon QuiBids' causes of action for: (i) trademark infringement, trade dress infringement and false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (ii) engaging in deceptive and unfair trade practices under the Oklahoma Deceptive Trade Practices Act; and (iii) common law unfair competition and false advertising.

Section 43(a) of the Lanham Act protects unregistered trademarks and trade dress in essentially the same manner as registered trademarks.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 US 763, 767-768 (1992).  *See also Brunswick Corp. v. Spinit Reel Co.*, 832 F. 2d 513, 516-517 (10th Cir. 1987).  With respect to goods and services, trade dress includes the "overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques."  *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)).  *See also Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F. 2d 1268 (10th Cir. 1988) ("Trade dress is a complex composite of features. One may be size, another may be color or color combinations, another may be

texture, another may be graphics and arrangement and so on. Trade dress is a term reflecting the overall general impact . . . of all these features taken together. . . . The law of unfair competition in respect to trade dress requires that all of the features be considered together, not separately," quoting with approval *SK & F Co. v. Premo Pharma. Labs., Inc.,* 481 F.Supp. 1184, 1187 (D.N.J.1979), *aff'd,* 625 F.2d 1055 (3d Cir.1980)).

In order to prevail on its claims of infringement of an unregistered trademark, trade dress infringement under the Lanham Act, QuiBids must show that confusion with respect thereto is likely.  In the Tenth Circuit, likelihood of confusion is evaluated according to a six-factor test in which the court considers: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in using the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks. *Utah Lighthouse Min. v. Foundation for Apologetic*, 527 F.3d 1045 (10th Cir., 2008).  Where a defendant uses a competitor's distinctive mark and/or non-functional trade dress in bad faith with actual confusion resulting to the detriment of the plaintiff competitor, the factors heavily favor a finding that confusion is likely.  *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F. 2d 934, 941-942 (10th Cir. 1983).  With respect to Lanham Act false advertising, "[i]f the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.,* 131 F.3d 430, 434 (4th Cir.1997) (quotation omitted).

Oklahoma further recognizes a common law right of action for unfair competition and trademark infringement, with the hallmark being likelihood of confusion. *Oklahoma District Council v. New Hope Assembly of God,* 597 P.2d 1211 (Okla. 1979). *Gen. Adjustment Bureau, Inc. v. Gen. Ins. Adjustment Co.*, 381 F.2d 991, 155 U.S.P.Q. 128 (10th Cir. 1967), *aff'g* 258 F. Supp. 535, 151 U.S.P.Q. 181 (N.D. Okla. 1966); *Prudential Ins. Co. of Am. v. Prudential Life & Cas. Ins. Co.*, 377 P.2d 556, 134 U.S.P.Q. 417 (Okla. 1962); *Bell v. Davidson*, 597 P.2d 753 (Okla. 1979).

Finally, under the Oklahoma Deceptive Trade Practices Act, 78 Okla. Stat. § 51 et seq., a person engages in a deceptive trade practice when they (1) pass off goods or services as those of another; (2) knowingly make a false representation as to the source, sponsorship, approval, or certification of goods or services; or (3) knowingly make a false representation as to affiliation, connection, association with, or certification by another. *See Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 527 (10th Cir. 1987).

> a.   <u>QuiBids Indisputably Owns Trademark and Trade Dress Rights that Have Been Used by Defendant Along with Defendant's False Statements that Matt Beckham is the CEO of SwipeBids.com.</u>

Since at least as early as October 2009, QuiBids has used the name QuiBids and associated logo as well as the distinctive and non-functional QuiBids trade dress in connection with online auction services.  Beckham Decl., at ¶1-3.  QuiBids independently created distinctive and non-functional advertisements which include the Video and the words "QuiBids.com Saves Consumers Up to 95% Off Retail" featured prominently. Beckham Decl., at ¶5.  Defendant, who registered the URL for www.swipebids.com on December 8, 2009 and created the SwipeBids.com website sometime thereafter, has no

rights in QuiBids' name, logo, trade dress, advertising designs or name of QuiBids' CEO. QuiBids' priority and ownership in its trademarks and distinctive trade dress is unquestionable.   The trademarks and trade dress are indisputably being used by Defendant, as well as false statements that Matt Beckham is the CEO of SwipeBids.com.

> b.   Customers and Potential Customers Have Been Actually Confused By Defendant's Tactics

Defendant has crafted its website and advertisements, utilized the Video and has made statements that Matt Beckham is the CEO of SwipeBids.com in order to confuse customers into believing SwipeBids.com is sponsored, approved, affiliated, associated or otherwise connected with QuiBids, and/or that the Video originates with Defendant's services rather than from QuiBids.   In fact, the Video originates with QuiBids' services, features QuiBids' trademark, shows QuiBids' trade dress, displays the name of QuiBids' CEO and is used by QuiBids in QuiBids' advertising.   Beckham Decl., at ¶5.   Defendant has removed any audible reference to QuiBids and Defendant continues to display the Video on Defendant's various websites, both with and without a disclaimer (which disclaimer is both visually and semantically obscure).   *Id*.   The Video automatically plays when any of Defendant's webpages that feature the Video are loaded, ensuring every visitor will be exposed to the Video.   *Id*.   Defendant employs trade dress and advertisements that ape those of QuiBids, and Defendant also falsely claims in advertising prose that QuiBids' CEO is the CEO of SwipeBids.com in order to make confusion likely among consumers and potential consumers in the online auction marketplace.   *Id*.   Defendant has succeeded in so doing.

The existence of actual confusion is direct evidence that in the market context of use confusion among consumers is likely. "There can be no more positive proof of likelihood of confusion than evidence of actual confusion." *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 74 (10th Cir. 1958). *See also Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1487 (10th Cir. 1987) ("Obviously, the best evidence of a likelihood of confusion in the marketplace is actual confusion.").

Here there a numerous instances of actual confusion. An article posted at AssociatedContent.com is titled is entitled *"Swipebids" and "QuiBids" Are the Same Penny Auction Ripoff* . Beckham Decl., at ¶12. The article concludes there can be "no doubt" they are the same. *Id*. Another example of actual confusion is a posting on the website ComplaintsBoard.com, which states Defendant and QuiBids must be the same entity based on a review of one of Defendant's advertising websites, www.channel9investigates.com, documented in the original pleading, wherein the News 9 Video is prominently featured. Beckham Decl., at ¶13. The website further offers contact information for aggravated users, including the home telephone number and address of QuiBids' CEO, Matt Beckham. *Id*. Consequently, it is no wonder that Matt Beckham has received calls and Facebook posts as a result of customers confused by Defendant's tactics, including threats. Beckham Decl., at ¶14.

This evidence of actual confusion validates the obvious: Defendant's use of the Video displaying QuiBids trademark, trade dress and the name of QuiBids' CEO, along with Defendant's express statements in advertising that Matt Beckham is the CEO of SwipeBids.com, is likely to create confusion with consumers in the relevant market that

SwipeBids.com is sponsored, approved, affiliated, associated or otherwise connected with QuiBids, and that the Video originates with Defendant's services rather than from QuiBids. Further, there is clear evidence that this confusion stems from Defendant's false claim that the CEO of SwipeBids.com is Matt Beckham, QuiBids' CEO, and from the deceptive use of the News 9 Video which Defendant's deceptively portray as originating with Defendant's services, which are both expressly discussed by confused consumers.

### 2. **QuiBids Will Suffer Irreparable Injury**.

QuiBids will suffer irreparable injury if Defendant is permitted to continue to make false statements and misleading representations to QuiBids' customers and potential customers. As the evidence shows, customers and potential customers have been and are likely to be actually confused about Defendant's relationship with QuiBids directly due to Defendant's false statements and misleading representations. Defendant's confusion of customers and potential customers of QuiBids directly harms QuiBids' goodwill, and cannot be undone with money damages.

"The rule followed by almost all courts is that [in preliminary injunction analysis] irreparable injury is presumed if a likelihood of success on the merits of trademark infringement is proven." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §30:47 (4th ed. 2010) ("McCarthy") and cases cited therein. The Tenth Circuit has accordingly observed, "infringement alone can constitute irreparable injury and that the movant is not required to show that it lost sales or incurred other damage." *GTE Corp. v. Williams*, 731 F.2d 676, 678-79 (10th Cir.1984) (finding preliminary injunction inappropriate on other grounds). Thus, where confusion is likely in a

trademark or trade dress infringement case, courts are justified in finding irreparable injury exclusively on that basis sufficient to support providing injunctive relief.

Nevertheless, QuiBids has additional evidence that irreparable injury is imminent. The Beckham Declaration cites two reports from the Better Business Bureau. Beckham Decl., at ¶16. The first report is for 1524948 Alberta Ltd. and the second is for QuiBids. The report for 1524948 Alberta Ltd. lists that company as owner of SwipeBids.com and gives the company a score of 'F'. The Better Business Bureau report for QuiBids gives QuiBids a score of 'B+'. Defendant offer vastly inferior services, and therefore any and all confusion drawn from Defendant's unlawful acts irreparably harms QuiBids' established goodwill, diminishes QuiBids' name and tarnishes QuiBids' reputation. As the Tenth Circuit has observed, "[A] trademark owner's inability to control the quality of the infringing party's product is irreparable injury." *GTE Corp. v. Williams*, 731 F. 2d 676 (10th Cir. 1984), summarizing *Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb Inc.,* 698 F.2d 862, 867 (7th Cir.1983). *See also Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) ("Furthermore, if an infringer's product is of poor quality, or simply not worth the price, a more lasting, but not readily measurable injury may be inflicted on the plaintiff's reputation in the market."); McCarthy §30:47 at 30-111 *et seq.*, subsection titled *Damages are Not Adequate to Compensate for Damage to Reputation* and cases cited therein. This damage to QuiBids' goodwill and confusion created among consumers and potential consumers in the online auction marketplace cannot be undone with money damages. Consequently, a preliminary injunction stopping Defendant's unlawful conduct is appropriate.

3.      **The Threatened Injury to QuiBids Outweighs Whatever Injury the Injunction May Cause Defendant.**

Defendant will not be harmed by being deprived of the ability to falsely claim QuiBids' CEO is the CEO of SwipeBids.com.  Similarly, Defendant will not be harmed by being forced to stop the misleading display of the Video about QuiBids' services on Defendant's various websites.  Conversely, QuiBids will be irreparably harmed should Defendant's conduct be allowed to continue.

McCarthy states that in making this analysis this question should focus on "whether the granting of a preliminary injunction would harm defendant significantly more than a denial would harm plaintiff.  If the answer is "no," then a preliminary injunction may be appropriate."  McCarthy §30:51 at 30-124.  Because irreparable injury to QuiBids is imminent and Defendant's suffer no injury by being forced to cease their unlawful conduct, the answer to McCarthy's question is clearly "no" and a preliminary injunction is appropriate.

4.      **A Preliminary Injunction is not Adverse to the Public Interest.**

"The public interest is served by enjoining unfair trade practices which occur within the stream of commerce subject to the lawful regulation of Congress and in violation of the Lanham Act."  *Chemlawn Serv. Corp. v. GNC Pumps, Inc.*, 690 F. Supp. 1560 (S.D.Tex. 1988).  *See also* McCarthy § 30:52 and cases cited therein.  In this case, the evidence demonstrates that Defendant's false statements and misleading representations violate § 43(a) of the Lanham Act, as well as Oklahoma State statutes and common law.  Defendant's acts of consumer deception and confusion contravene the

policies underlying the Lanham Act and other laws promoting fair trade.  Ultimately, an injunction is the most equitable remedy not only for QuiBids but also for the public.

### C.   THREATS OF POSSIBLE COUNTERCLAIM EVIDENCE DEFENDANT'S WILLFUL INFRINGEMENT AND BAD FAITH

Counsel for QuiBids sent a cease and desist letter to Defendant demanding that Defendant cease infringement and its deceptive advertising.  Specifically, QuiBids demanded Defendant cease use of the Video.

In response, counsel for Defendant sent counsel for QuiBids a letter asserting trade dress infringement based on similar ideas used in a certain graphic created by Defendant and a graphic created by QuiBids.  Beckham Decl., Exhibit F.  This letter includes a side-by-side comparison of the two graphics.  *Id*.  A short time after receiving the letter, counsel for Defendant asserted QuiBids' graphic constituted copyright infringement and that Defendant was – *after the fact of QuiBids purported infringement* – registering copyrights for the graphic at issue so that it had the ability to bring a counterclaim for infringement of a registered copyright.  QuiBids believes any claim of trade dress infringement or copyright infringement based on these graphics is without merit.

Relevant to the present motion, during the communications between counsel for QuiBids and Defendant, Defendant modified their graphic to send a message to QuiBids.  Rather than cease use of the Video as requested, out of clear spite and evidencing intentional infringement and bad faith Defendant modified their graphic to include and feature the Video.  The modified graphic is depicted below:

### <u>DEFENDANT'S MODIFIED GRAPHIC</u>



News 9 Video about QuiBids on Defendant's Modified Graphic

Defendant's modification of the graphic to feature the News 9 Video that QuiBids uses in QuiBids' own advertising evidences Defendant's bad faith and the intentional nature of their infringement, false advertising, deceptive trade practices and confusion of the public.

**D.  CONCLUSION**

For the reasons set forth above, QuiBids' motion for preliminary injunction should be granted.

Respectfully submitted,


*/s/  Michael D. McClintock*

Michael D. McClintock, OBA #18105
Anthony L. Rahhal, OBA #14799
Ryan L. Lobato, OBA #22211
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK  73102
Telephone:    (405) 235-9621
Facsimile:    (405) 235-0439

**ATTORNEYS FOR QUIBIDS, LLC**