**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

QUIBIDS, L.L.C., an Oklahoma )
limited liability company, )
 )
     Plaintiff, )
 )
v. )  Case No. 5:10-cv-00639-R
 )
1524948 ALBERTA LTD., d/b/a )
TERRA MARKETING GROUP, )
a Canadian entity, represented by )
counsel for SWIPEBIDS.com to )
be the owner of the domain name )
swipebids.com, )
 )
     Defendant. )

**PLAINTIFF'S MOTION TO PRELIMINARILY AND PERMANENTLY
ENJOIN DEFENDANT FROM PROSECUTING NEW YORK ACTION
<u>AND BRIEF IN SUPPORT</u>**

Pursuant to Federal Rule of Civil Procedure 65, the plaintiff, QuiBids, L.L.C.

("QuiBids"), moves the Court for an order preliminarily and permanently enjoining the

defendant, 1524948 Alberta Ltd. d/b/a Terra Marketing Group ("Defendant" or "Terra

Marketing"), from prosecuting Civil Action No. 10-CV-5686, styled *1524948 Alberta*

*Ltd. d/b/a Terra Marketing Group v. QuiBids, LLC and Matt Beckham and Intermark*

*Communications, Inc. d/b/a COPEAC,* filed in the United States District Court for the

Southern District of New York (the "SDNY Action"). In support of its motion, QuiBids

respectfully submits the following brief.

## I.      <u>INTRODUCTION</u>

Defendant's business is apparently located in Alberta, Canada, and Defendant is not licensed to do business in the State of New York.    Nevertheless, more than one month after QuiBids filed this lawsuit against Defendant, and while Defendant was evading (and continues to evade) service of process resulting in issuance of a TRO, Defendant filed a practically mirror-image lawsuit against QuiBids (and its president) in the Southern District of New York.

Under the first-filed rule, this Court is the proper court to determine which case should proceed..[1]  *Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir. 1982).   Applying the first-filed rule, this Court is vested with the authority to enjoin Defendant from prosecuting the second-filed suit in New York.   *See, e.g., Chicago Pneumatic Tool Co. v. Hughes Tool Co.,* 180 F.2d 97, 101 (10th Cir. 1950) ("A federal district court which first obtains jurisdiction of parties and issues may preserve its jurisdiction by enjoining proceedings involving the same issues and parties, begun thereafter in another federal district court."); *Northwest Airlines v. American Airlines,* 989 F.2d 1002, 1004 (8th Cir. 1993) ("The discretionary power of the federal court in which the first action is pending to enjoin the parties from proceeding with a later-filed

---

[1] The Southern District of New York also follows the "bright-line rule" in situations where two lawsuits are simultaneously pending in different federal courts:   "**The court before which the first-filed action was brought determines which forum will hear the case**."    *MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F.Supp.2d 266, 267 (S.D.N.Y. 2002) (emphasis added).  *See also Citigroup Inc. v. City Holding Co.,* 97 F. Supp.2d 549, 555 (S.D.N.Y. 2000) (recognizing a priority in this district that "the court which first had possession of the action decides it").

action in another federal court is firmly established.").  In the interim, QuiBids has filed a motion to stay the SDNY Action while this Court decides the issue.

Several tenants of the first-filed doctrine inform this Court's analysis in deciding to enjoin prosecution of the SDNY Action:

1.  "It is well established in this Circuit that where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court."[2]

2.  "First-filed" simply means the action whose complaint was filed first, regardless of dates of service.[3]

3.  In applying the first-filed doctrine, "[i]dentical parties and issues are not required; rather, the inquiry is whether there is a 'substantial overlap' between the cases."[4]

In the present case, it is indisputable that QuiBid's action was filed first and the actions are substantially similar.  The WDOK Complaint complains of Defendant's use of certain materials on its www.swipebids.com website that infringe upon materials found on the www.quibids.com website and/or constitutes false designation of origin.  In mirror image, the SDNY Complaint seeks a declaration that the acts complained of in this lawsuit are not unlawful, and further alleges claims that QuiBid's website and advertisements infringe Defendant's copyright/trademark and constitute trade libel. Accordingly, both suits hinge on a factual analysis of the parties' websites and

---

[2] *O'Hare Int'l Bank v. Lambert,* 459 F.2d 328, 331 (10th Cir. 1972) (holding district court erred by denying motion to stay second-filed action until conclusion of first-filed action).

[3] *Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir. 1982) (holding court where complaint was filed first, not court in which service was first accomplished, was the court in which jurisdiction attached for purposes of the first-filed doctrine).

[4] *Miller v. Nat'l RR Passenger Corp.,* 2007 WL 1159997 (D. Colo. Apr. 17, 2007) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997)).

advertising campaigns and a legal analysis of whether the materials found therein are infringing and/or misleading.  As such, the Oklahoma Action and the SDNY Action are substantially similar.  For these reasons, and as set forth in more detail below, the Court should enter an order that: (i) this action should proceed as the first-filed action; (ii) Defendant should be enjoined from prosecuting the SDNY Action; and (iii) Defendant should be ordered to assert its claims against QuiBids' as counterclaims in this action. QuiBid's will then file a motion in the SDNY action that the action be dismissed.

In furtherance of its blatant forum shopping, it is necessary to note that Defendant has added an advertising company named "COPEAC" as a party to the SDNY Action. Defendant alleges that each party has a contract with COPEAC that has a venue clause providing venue in New York.  Defendant asserts that these venue clauses somehow confer venue of the dispute between QuiBids and Defendant in New York; however, there is no claim for breach of or interference with any COPEAC contract and COPEAC is irrelevant to the dispute.  While it is well established that the first-filed rule does not require *identical* parties in both cases, but merely a 'substantial overlap between the parties to both actions, counsel for QuiBids cannot imagine a more transparent attempt to gain improper venue than naming a third party and trying to enforce its contractual venue provision in an unrelated dispute.

## II.      STATEMENT OF FACTS

### Plaintiff and Defendant operate competing websites.

1.      QuiBids is the owner and operator of the website www.quibids.com. (WDOK Compl. at ¶ 11).

2.      Defendant is the purported owner and operator of the website located at http://www.swipebids.com.  (SDNY Compl. at ¶ 14).

3.      These two websites are competitors in the online auction business, with QuiBids and Defendant running an online penny auction from their respective websites.

4.      QuiBids launched its penny auction at www.quibids.com at least as early as October 2009.  (WDOK Compl. at ¶ 11).

5.      Defendant launched its penny auction at www.swipebids.com in December 2009.   (SDNY Compl. at ¶ 14).

6.      These competing online auction companies have now commenced competing lawsuits against one another in two different forums, with both lawsuits accusing the other website of copyright, trademark and/or trade dress infringement and false advertising.

**QuiBids filed the Oklahoma Action on June 21, 2010.**

7.      Importantly, QuiBids commenced this lawsuit against Terra Marketing[5] on **June 21, 2010** (referred to herein as the "Oklahoma Action").

8.      QuiBids is an Oklahoma entity with its principal place of business located in Oklahoma City.  (WDOK Compl. at ¶ 2).

9.      In the Oklahoma Action, QuiBids complains of Defendant's use of certain materials on its www.swipebids.com website that infringes upon materials found on the

---

[5] The Oklahoma Action was originally filed against "John Doe, the owner of the domain name Swipebids.com," since the identity of the owner thereof was concealed and intentionally withheld from QuiBids' counsel.  On July 13, 2010, QuiBids filed an Amended Complaint in which it named 1524948 Alberta Ltd. d/b/a Terra Marketing Group as Defendant, after finally having learned the identity of the owner of the Swipebids.com domain name.

www.quibids.com website and/or constitutes false designation of origin.  For instance,

QuiBids complains that Defendant has taken a clip of a news story that Oklahoma City's

News 9 ran specifically on QuiBids' online penny auction business and has placed that

news story on the www.swipebids.com website and within its online marketing campaign

in a way that leads viewers to believe that the story, in fact, addresses swipebids.com

rather than quibids.com.  (WDOK Compl. at ¶¶ 17-22).   QuiBids also complains that

Defendant is using QuiBids' trademarks and trade dress on its www.swipebids.com

website in a manner that infringes upon QuiBids' rights therein and use thereof.  (WDOK

Compl. at ¶¶ 13-16).   QuiBids further complains that Defendant is using QuiBids' own

customer testimonials as testimonials on www.swipebids.com.  (WDOK Compl. at ¶ 20).

10.     The Oklahoma Action asserts claims against Defendant for (i) trademark

infringement; (ii) trade dress infringement/unfair competition/false advertising/false

designation of origin; (iii) violation of Oklahoma's deceptive trade practices act; and (iv)

common law unfair competition, trade dress infringement and passing of.

11.     In the Oklahoma Action, this Court on August 3, 2010, issued a Temporary

Restraining Order against Defendant.  The TRO restrains Defendants from: (i) in any way

using the News 9 Video in connection with www.swipebids.com; and (ii) falsely

claiming QuiBids' president Matt Beckham as Defendant's CEO.  (WDOK Docket Entry

No. 8).

### Terra Marketing filed the SDNY Action on July 27, 2010.

12.     More than a month after the Oklahoma Action had been filed, Terra

Marketing Group instituted the SDNY Action lawsuit on **July 27, 2010**, against QuiBids,

its president Beckham, and Intermark Communications, Inc. d/b/a COPEAC ("COPEAC"), alleging practically the inverse of the claims that QuiBids has alleged against Terra Marketing Group in the Oklahoma Action.  The SDNY Complaint is attached hereto as Exhibit 1.

13.    Why Terra Marketing chose to commence litigation in the Southern District of New York remains a mystery, as to QuiBids' knowledge, Terra Marketing does not have a place of business in New York and, instead, operates out of Canada and Terra Marketing has not alleged any particular injury occurring in New York that wouldn't have been experienced (if at all) in any location in the United States receiving internet access.

14.    The SDNY Action asserts against QuiBids and its president the following causes of action:  (i) copyright infringement, arising from QuiBids somehow gaining access to "secret" copyrighted "key sales" pages from the www.swipebids.com website and allegedly using same in QuiBids' website; (ii) trade libel in violation of the Lanham Act because of a facebook account allegedly operated by an unidentified agent of QuiBids[6]; (iii) false advertising in QuiBids' use of the pictures of two female news reporters on its website in advertisements allegedly suggesting that these reporters have

---

[6] While QuiBids is confident that ultimately it will prevail on all claims brought against it and its president, none are quite as frivolous as the claims based on the allegation, "Upon information and belief, QuiBids is also the creator, owner, administrator, and/or other party responsible for the creation and/or maintenance of a Facebook group entitled 'Swipebids.com-is-a-Bloody-Scam'" and allegedly derogatory comments found thereon. (SDNY Compl. at ¶¶ 8, 32).  QuiBids today can produce ample evidence to support a summary judgment finding in its favor that it has no connection whatsoever with the referenced Facebook account.

favorably investigated www.quibids.com and in using fake customer testimonials on the website; (iv) defamation arising from comments published on the alleged facebook account; and (v) declaratory judgment.

15.     The request for declaratory relief in the SDNY Complaint drives home the fact that the SDNY Action is practically a mirror image of the instant Oklahoma Action:

> [] QuiBids contends, among other things, that [Terra Marketing] infringed upon [] QuiBids trademarks and/or other rights due to [Terra Marketing]'s use of a clip of a news video about the penny auction industry generally. [] QuiBids also contends that [Terra Marketing]'s website infrings on [] QuiBids' trademark and trade dress.  Lastly, [] QuiBids has … alleged that [Terra Marketing]'s marketing is valse and violative of the federal Lanham Act.  [Terra Marketing], in turn, contends that QuiBids infringed upon [Terra Marketing]'s copyright, trademark, trade dress, and other protected interests and that QuiBids committed false advertising, trade libel, and other violations of the Lanham Act, the Copyright Act, and other provisions. (SDNY Compl. at ¶ 67)

This characterization clarifies that both parties in their respective lawsuits are complaining about materials on each other's websites and whether such materials constitute infringement and/or false advertising.  In particular, in both lawsuits, the parties complain about alleged depictions of news reports on each other's websites, alleged unauthentic customer testimonials on each other's websites, and about copying copyrighted and/or trademarked materials from each other's websites.

## III.    ARGUMENTS AND AUTHORITIES

Generally, to obtain a preliminary injunction over a *substantive* action related to the lawsuit, the movant must show:  (1) movant's probability of success at trial on the merits; (2) irreparable injury to movant if the preliminary injunction is not issued; and (3)

that the balance of the equities weighs in favor of the movant.  *See, e.g., Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992).  However, with the present Motion, wherein the Court is only being asked to determine *procedurally* which forum is the most proper for prosecution of the litigation, the question of likelihood of success on the actual merits is not relevant.[7]  *See, e.g., Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1004 (8th Cir. 1993).

Rather, the ultimate question to consider in the present Motion is Plaintiff's right to its choice of forum and is a question that falls within the Court's sound discretion. *See, e.g., Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). This discretion should be exercised based upon a balancing of the conveniences provided by the two proposed forums, with due regard being given to the general rule that the forum in which the issues were first raised is the forum in which they should be decided. *See Kerotest Mfg. Co. v. C-O-TWO Fire Eqpt. Co.*, 342 U.S. 180, 185-86 (1952).

### A.    This Motion is Governed by the "First to File" Rule Plus a Consideration of the Convenience of the Two Forums.

"It is well established in this Circuit that where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court." *O'Hare Int'l Bank v. Lambert,* 459 F.2d 328, 331 (10th Cir. 1972) (holding district court erred by denying motion to stay second-filed action until conclusion of first-filed action). *See also Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir. 1982) (following "general rule that when two courts have

---

[7] *But see* QuiBids' Motion for Preliminary Injunction on substantive issues already filed in this Lawsuit, in which QuiBids demonstrates its likely success on the merits.  (WDOK Docket Entry Nos. 6, 7).

concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case").   "The rule is that the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965).

The first-filed doctrine is widely recognized across the Circuits. *See generally E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969).

At the heart of the doctrine is the preservation of judicial efficiency:

> The "first-filed rule" has the benefit of being a relatively firm rule that, while providing for the exceptional case, [mainly] avoids … the need for ad hoc balancing of innumerable factors on a case-by-case basis [and therefore] is both more predictable for litigants—yielding more speedy, less expensive adjudication—and more easily applied by the courts—preserving scarce judicial resources.

*Mid-American Energy Co. v. Coastal Gas Mkt. Co.*, 33 F. Supp.2d 787, 791 (N.D. Iowa 1998).   The first-filed rule is intended to prevent "wastefulness of time, energy and money" by barring simultaneous prosecution of similar lawsuits in two different courts. *Cessna Aircraft Co. v. Brown*, 348 f.2d 689, 692 (10th Cir. 1965).   *See also Black Diamond Equip., Ltd. v. Genuine Guide Gear,* 2004 WL 741428, *1 (D. Utah Mar. 12, 2004) (the rule is intended "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that

call for a uniform result.") (quoting *Save Power Ltd. v. Syntek Finance Corp.,* 121 F.3d 947, 950 (5th Cir. 1997)).

In applying the first-filed doctrine, this Court has the discretion to enjoin the SDNY Action from proceeding. *See, e.g., Chicago Pneumatic Tool Co. v. Hughes Tool Co.,* 180 F.2d 97, 101 (10th Cir. 1950) ("A federal district court which first obtains jurisdiction of parties and issues may preserve its jurisdiction by enjoining proceedings involving the same issues and parties, begun thereafter in another federal district court."); *Shannon's Rainbow,* 683 F.Supp.2d at 1279 (enjoining further action in the second-filed court).

### 1.     The Oklahoma Action was filed first.

"First-filed" simply means "the action whose complaint was filed first" regardless of dates of service. *MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F.Supp.2d 266, 267 n.3 (S.D.N.Y. 2002) ("The relative dates of service are not relevant to this inquiry."). *See also Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir. 1982) (holding court where complaint was filed first, not court in which service was first accomplished, was the court in which jurisdiction attached for purposes of the first-filed doctrine); *Shannon's Rainbow, LLC v. SuperNova Media, Inc.,* 683 F.Supp.2d 1261, 1278 (D. Utah. 2010) ("It is the first to file, not the first to serve that is controlling"). Which complaint was first filed is determined "in a technical and formal sense (i.e., based on the 'time stamp' on the complaint)." *MSK Ins.,* 212 F.Supp.2d at 268 n. 5. *See also Miller v. Nat'l R.R. Passenger Corp.*, 2007 WL 1159997, *1 (D. Colo. Apr. 17, 2007) (finding "jurisdiction first attached in this court with the filing of Plaintiffs' complaint").

There can be no dispute that the Oklahoma Action was filed prior to SDNY Action.  The
Complaint in the Oklahoma Action bears a time stamp <u>one month and six days</u> before the
Complaint was filed in this SDNY Action.

> **2.    There exists a substantial overlap between the Oklahoma Action
> and the SDNY Action.**

In applying the first-filed doctrine, "[i]dentical parties and issues are not required;
rather, the inquiry is whether there is a 'substantial overlap' between the cases." *Miller v.
Nat'l RR Passenger Corp.,* 2007 WL 1159997 (D. Colo. Apr. 17, 2007) (citing *Save
Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997); *TPM Holdings, Inc.
v. Intra-Gold Indus., Inc.,* 91 F.3d 1, 4 (1st Cir. 1996)).  *See also Manufacturers Hanover
Trust Co. v. Palmer Corp.,* 789 F.Supp. 161, 167 (S.D.N.Y. 1992) (noting that "obsessing
over slight differences between actions does not promote judicial economy").

> a.   <u>The parties in both actions substantially overlap.</u>

Here, there is a substantial overlap in parties.  QuiBids is the plaintiff in the
Oklahoma Action and the main defendant in SDNY Action.  Terra Marketing is the
defendant in the Oklahoma Action and the Plaintiff in the SDNY Action.

That QuiBids' president and part-owner Matt Beckham is a defendant in the
SDNY Action and not a party herein does <u>not</u> negate substantial overlap for two reasons.
First, as its president, he has an obvious alignment with QuiBids.  *See, e.g., Spotless
Enter., Inc. v. Accessory Corp.*, 415 F. Supp.2d 203, 206 (E.D.N.Y. 2006) (holding
addition of third party defendant not a party to first action did not defeat first-filed
doctrine where additional party was aligned with a party to both actions); *Black
Diamond,* 2004 WL 741428 at * 2 n.1 (noting fact that inventor was named as a party in

only one of the actions does not change the first-filed analysis).   Second, the asserted basis for liability against Beckham is vicarious liability stemming from his position with the company.   SDNY Compl. throughout ("Through his activities as the president or other principal of QuiBids …").   Because Beckham's alleged liability is premised on the same actions as QuiBids or on actions that Beckham allegedly took on behalf of QuiBids and/or in his role as president of QuiBids, the claims against Beckham cannot be separated from the claims against QuiBids and do not defeat a finding of substantial overlap.   *See, e.g., Miller,* 2007 WL 1159997 at * 2 (derivative claims by a third-party "should not be separated" for purposes of a first-filed analysis and did not defeat substantial overlap).

The same is true for the addition of COPEAC as a defendant in the SDNY Action.[8]   The SDNY Complaint excludes COPEAC from the definition of "Defendants" and explicitly concedes that COPEAC "is included in this action because the injunctive and declaratory relief sought by Plaintiff will affect COPEAC as well."   SDNY Compl. at ¶ 1.[9]   The extent to which such relief will "affect COPEAC" is questionable.   A close look at the SDNY Complaint reveals that COPEAC is not a necessary party to the injunctive and/or declaratory relief, by any stretch of the imagination.

---

[8] COPEAC's addition to the SDNY Action is tenuous at best and is an obvious attempt by Terra Marketing to establish a fixed venue in the SDNY through a venue provision found in an alleged contract with COPEAC.   SDNY Compl. at ¶ 3(c).   Notably, there are no claims brought in the SDNY Action that arise from any application of a contract  with COPEAC.   For instance, the SDNY Complaint does not allege any breach of or interference with a COPEAC contract.

[9] Count V, which requests Declaratory Relief, specifies that it is "Against QuiBids and Beckham Only."   Because the reference in Paragraph 1 of the Complaint suggests that declaratory relief will affect COPEAC, the analysis herein addresses the absence of a connection between COPEAC and the request for declaration.

For instance, Terra Marketing's Count I for copyright infringement states that it is alleged "against COPEAC as to injunctive relief only."  Count I, however, contains only one reference to COPEAC:  "Plaintiff is entitled to injunctive relief … requiring the cessation and prevention of all means by which such infringement may be conducted (including but not limited to QuiBids' affiliate account with COPEAC)."  SDNY Compl. at ¶ 45.  To the extent that Terra Marketing can establish that it is entitled to an injunction, it can achieve its goal of preventing QuiBids and/or Beckham from using COPEAC as a means of infringement by obtaining an injunction specifically against QuiBids and/or Beckham ordering that they not use COPEAC for such purposes, without obtaining an injunction ordering COPEAC to take any action to prevent QuiBids' use thereof.

Similarly, Terra Marketing requests a declaration that

> [i] QuiBids and Beckham have infringed upon Plaintiff's copyright and/or other rights in creative materials and/or other works relating to SwipeBids; [ii] that the interests alleged by Plaintiff to have been infringed upon by Defendants were protected by copyright or other rights …; and [iii] that Plaintiff did not infringe upon any copyright or other legally protected interest of QuiBids and is not liable to QuiBids in any respect.  (SDNY Compl. at Prayer for Relief, ¶ 5).

The only connection to COPEAC alleged in its claim for declaratory relief is an allegation that the alleged infringement by QuiBids and Beckham somehow was facilitated "in part through the use of the facilities of COPEAC."  *Id.*  Drilling down even further into this vague reference reveals that Terra Marketing does not contend that COPEAC directly or intentionally facilitated the infringement but only that an

unidentified "third party independent affiliate publisher of COPEAC" did so.  SDNY Compl. at ¶ 67.   Thus, Terra Marketing does not request declaratory relief against COPEAC or a declaration that COPEAC did or did not violate any parties' rights in any manner whatsoever.   That another user of COPEAC's services allegedly provided a means of infringement does not make COPEAC a necessary party to the request for declaratory relief.  In short, COPEAC's joinder in the SDNY Action (or this action if consolidated) is not required under Federal Rule 19(a) because a court can accord complete relief on the request for injunctive and/or declaratory relief without COPEAC's participation and disposing of the action, even as doubtful as it is that COPEAC would claim an interest herein, would not leave either QuiBids or Terra Marketing subject to a risk of additional litigation by COPEAC at the resolution of the current dispute.  Fed. R. Civ. P. 19(a).

Thus, the addition of Beckham and COPEAC as parties to the SDNY Action does not negate a finding that the two actions substantially overlap.  *See, e.g., Shannon's Rainbow,* 683 F.Supp.2d at 1279 ("Although these suits do not name identical parties, they name similar parties with enough overlap to satisfy this element.")

b.  The issues substantially overlap.

Likewise, there is a substantial overlap in issues raised in the Oklahoma Action and the SDNY Action.  "[T]he issues must only be substantially similar in that they seek like forms of relief and hinge on the outcome of the same legal/factual issues." *Shannon's Rainbow,* 683 F.Supp.2d at 1279.  QuiBids and Terra Marketing operate websites that are competitors of one another in the industry of online penny auctions.

The two lawsuits primarily raise competing and almost mirror-image claims of infringement and false advertisement of materials found on the other's website.  For instance, the Oklahoma Action complains of materials found on www.swipebids.com, particularly materials that infringe trademarks and trade dress from QuiBids' website www.quibids.com as well as materials that QuiBids contends constitute false advertising.  In converse, the SDNY Action complains of materials on www.quibids.com as infringing copyrighted materials from www.swipebids.com and constituting false advertising.  The two lawsuits substantially overlap because, in both lawsuits, the parties complain about alleged depictions of news reports on each other's websites, alleged unauthentic customer testimonials on each other's websites, and about copying copyrighted and/or trademarked materials from each other's websites.  Resolution of the two lawsuits will require a factual assessment of the contents on each party's website and marketing campaigns and a legal determination of whether such materials constitute an infringement and/or false advertising.  The claims alleged in the SDNY Action clearly respond to the claims alleged here in the Oklahoma Action.  *See, e.g., Black Diamond*, 2004 WL 741428 at * 2 (finding second action alleged claims that were either a mirror image of the first suit's infringement claims or were responses to such claims); *Alden Corp. v. Eazypower Corp.*, 294 F.Supp.2d 233, 236 (D. Conn. 2003) (finding competing infringement claims and additional related claims alleged in two federal suits to arise from a common nucleus such that "efficiency and economy support resolving them in the same [first-filed] forum.").

###### 3.   No exception applies.

"The plaintiff's choice of forum in the first-filed suit is entitled to great weight and should not be disturbed absent a strong showing by defendant." *Victor Co., L.L.C. v. Ortho Organizers, Inc.,* 932 F.Supp. 261, 264 (D. Kan. 1996) (granting motion to enjoin second suit from proceeding).   In order to avoid the first-filed doctrine, Defendant Terra Marketing bears "the burden of demonstrating any special circumstances justifying an exception to the [first-filed] rule. *See, e.g., 800-Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 132 (S.D.N.Y. 1994).   "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suits, and forum shopping." <u>Alltrade, Inc., v. Uniweld Products Inc.</u>, 946 F.2d 622, 628 (9th Cir. 1991); *See also Black Diamond*, 2004 WL 741428 at * 2 (recognizing bad faith and forum shopping exceptions).

Bad faith forum shopping occurs in cases of a race to the courthouse where a declaratory judgment action is filed first and only shortly before the substantive action is filed, and is filed in a forum to which neither of the parties has an obvious connection. *See, e.g., Republic Ins. Co. v. Sinclair Oil Corp.*, 791 F. Supp. 278, 280-81 (D. Utah. 1992) (first suit sought declaratory relief and was filed a mere 66 minutes before second suit).   That certainly is not the case with the first-filed action here in Oklahoma:   this Oklahoma Action does not seek declaratory relief; it was filed a month and six days prior to the SDNY Action; and with QuiBids' principal place of business here in Oklahoma, the dispute has an obvious connection with Oklahoma. *See Black Diamond,* 2004 WL 741428, *3 (finding no bad faith or forum shopping where: second action was filed

"more than a month after" the first action; first action sought injunctive relief, not declaratory judgment; and first filer had significant contacts with the first forum).

## IV.   CONCLUSION

For the reasons set forth above, Defendant should be preliminarily and permanently enjoined from prosecuting Case No. 10-cv-5686 pending in the Southern District of New York.  In particular, QuiBids respectfully requests that the Court issue an Order that (i) this action should proceed as the first-filed action; (ii) Defendant should be enjoined from prosecuting the SDNY Action; and (iii) Defendant should be ordered to assert its claims against QuiBids' as counterclaim in this action.  QuiBids seeks any further relief to which the Court finds it justly entitled.

Respectfully submitted,

/s/  Michael D. McClintock
Michael D. McClintock, OBA #18105
Anthony L. Rahhal, OBA #14799
Ryan L. Lobato, OBA #22211
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK  73102
Telephone:   (405) 235-9621
Facsimile:     (405) 235-0439

**ATTORNEYS FOR QUIBIDS, LLC**

## CERTIFICATE OF SERVICE

This is to certify that on this 9th day of August, 2010, the foregoing was sent via electronic mail to the below email address, as well as by Federal Express to the following:


Karl S. Kronenberger
Kronenberger Burgoyne, LLP
150 Post Street, Suite 520
San Francisco, CA  94104

**karl@kbinternetlaw.com**


**ATTORNEY FOR DEFENDANTS
IN THE NEW YORK ACTION**


*/s/  Michael D. McClintock*